# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH DECOTEAU, et al., <br><br>    Plaintiffs, <br><br>    v. <br><br>FCA US LLC (f/k/a/ Chrysler Group LLC), a Delaware limited liability company, <br><br>    Defendant. | No. 2:15-cv-00020-MCE-EFB <br><br><br>**MEMORANDUM AND ORDER** |

Through this class action, Plaintiffs Deborah DeCoteau and Lilliana Navia ("Plaintiffs") bring claims under various consumer protection statutes against Defendant FCA US LLC (f/k/a/ Chrysler Group LLC) ("Defendant"). Specifically, Plaintiffs allege that they are entitled to declaratory, injunctive, and monetary relief because Defendant knowingly manufactured and marketed vehicles known as "Dodge Darts" (hereafter, the "Dart") that were equipped with defective transmissions. Presently before the Court are Defendant's Motion to Dismiss Plaintiff's First Amended Complaint ("FAC") for failure to state a claim ("Motion to Dismiss") and Motion to Strike Request for Recall ("Motion to Strike"). ECF Nos. 20-21. For the reasons that follow, the Court agrees that Plaintiffs must allege specific facts to support their conclusion that their vehicles were defective in order to adequately state a claim. The Court therefore GRANTS Defendant's Motion to

Dismiss and DISMISSES Plaintiff's FAC with leave to amend. As a result, the Court need not consider the remaining arguments set forth in Defendant's Motion to Dismiss or its Motion to Strike.[1]

## BACKGROUND[2]

Defendant designs and manufactures motor vehicles for sale in the United States and throughout the world. One such vehicle is the Dart. In 2012, Defendant began manufacturing and marketing Darts that were equipped with Dual Dry-Clutch Transmissions ("DDCT"). Defendant characterized the DDCT as a "best of both worlds" transmission that combined a manual transmission's fuel efficiency with an automatic transmission's ease of operation. Traditional manual transmissions require the driver to press a foot pedal to manually change gears. Typical automatic transmissions, on the other hand, obviate the need for manual shifting by substituting a torque converter for the use of a manual clutch. The torque converter transmits power from the engine to the transmission through a fluid medium. Since a clutch-operated gearbox transfers power from the engine more efficiently than a torque converter, automatic transmissions are generally less fuel efficient and slower-shifting than their manual counterparts. The DDCT uses two computerized "dry" clutches instead of a torque converter to directly engage and disengage the engine from the transmission, theoretically providing both greater convenience and increased fuel efficiency.

Plaintiffs are California citizens, each of whom purchased a Dart equipped with a DDCT primarily for personal, family, or household use. Within a year of purchase, Plaintiffs noticed that their Darts would sometimes surge forward or hesitate before taking off from a stop. Approximately a year-and-a-half after she purchased her Dart,

---

[1] Because the Court determined that oral argument would not be of material assistance, it ordered the matters submitted on the briefs pursuant to Local Rule 230(g).

[2] The following recitation of facts is taken from Plaintiffs' FAC (ECF No. 17).

Plaintiff DeCoteau experienced a problem in which the vehicle stopped moving while she was driving, as though it was stuck in park or neutral, although the engine continued to run.  Plaintiff Navia similarly experienced rough and jerking transmission shifts.  In addition, she contends that when she stopped her Dart, the vehicle would automatically move backward.  According to Plaintiffs, "one or more design and/or manufacturing defects" contained in the DDCT caused these and a host of other problems.[3]  Because these problems severely affect a driver's ability to control speed, acceleration, and deceleration, Plaintiffs contend they present a safety hazard to DDCT-equipped Dart occupants.  The Transmission Defect also purportedly causes premature wear to the DDCT and related components.

Each of Plaintiffs' causes of action depends on the existence of the Transmission Defect.  Defendant's Motion to Dismiss is thus GRANTED because that defect is inadequately pled.

## STANDARD

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic

---

[3] Plaintiffs refer to the potentially numerous design and/or manufacturing defects as the "Transmission Defect."  The Court will adopt Plaintiff's usage hereafter.

3

recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 555 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing Wright & Miller, supra, at 94, 95). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183,

1   185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that
2   "the complaint could not be saved by any amendment."  Intri-Plex Techs. v. Crest Group,
3   Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006,
4   1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir.
5   1989) ("Leave need not be granted where the amendment of the complaint . . .
6   constitutes an exercise in futility . . . .")).

## ANALYSIS

This case presents a close question regarding the level of factual specificity necessary to plead claims based on product defects.  Defendant argues that the FAC should be dismissed because the conclusory allegation that Plaintiffs' Darts have "defective transmissions" fails to plausibly establish the existence of a defect or connect such a defect to the harm Plaintiffs suffered.  ECF No. 21 at 8-9.  To that end, Defendant contends that Plaintiffs have failed to allege how a specific defect within the transmission caused the "symptoms" Plaintiffs purportedly experienced.  ECF No. 21 at 9.  Plaintiffs oppose Defendant's Motion, of course, asserting that they are not required to plead the precise mechanical details of an alleged defect in order to state a claim.  ECF No. 23 at 4-6. Plaintiffs further argue that their allegations concerning the Transmission Defect are more than sufficient to permit Defendant to effectively defend itself since Defendant has superior information regarding the design, manufacturing, and operation of the DDCT.  See id. at 4.

The Ninth Circuit has not squarely addressed the level of detail necessary under these circumstances.  Nor is there any consensus at the district level.  Compare Aguilar v. General Motors, LLC, No. 1:13-CV-00437, 2013 WL 5670888 at *7 (finding allegation of a "steering defect that can result in potential failure of power teering . . . and loss of steering control during the normal course of driving" sufficient to survive a motion under Rule 12(b)(6)), with Fontalvo ex rel. Fontalvo v. Sikorsky Aircraft

Corp., 2013 WL 4401437 at *4 (dismissing cause of action because Plaintiff failed to allege what particular component was defective or what aspects of the component's design and manufacture made it defective).

For instant purposes, however, the Court finds the decision in Yagman v. General Motors to be the most directly on point. No. CV-14-4696, 2014 WL 4177295 at (C.D. Cal. Aug. 22, 2014). In Yagman, a plaintiff alleged that his vehicle's engine stopped running and experienced a complete electrical shutdown. Id. at *2. Testing did not reveal any problems, but the engine eventually broke down again. Id. That court reasoned that injuries caused by a defect, as alleged in the complaint, are different from a defect itself, which was not identified. Id. at 3. According to that court, the fact that the vehicle's engine stopped working and that the vehicle experienced a total electrical failure were symptoms of a defect rather than actual defects themselves. Id. at 3. More specifically, the fact that the engine failed made it possible that the failure was the result of a defect, but the failure itself did not plausibly lead to the conclusion that a defect was the cause. Id. The court therefore dismissed the complaint with leave to amend, instructing the plaintiff that the amended complaint "should set forth the specific facts on which Plaintiff bases his belief that a defect" caused the harm he suffered. Id.

Here, Plaintiffs' FAC contains the same infirmities as the complaint in Yagman. Plaintiffs allege generally that there must be one or more defects in the DDCT and assert that those defects cause various injuries. ECF No. 17 at ¶ 14. Plaintiffs do not, however, allege actual facts that make the existence of either a design or manufacturing defect plausible.

The Court does not necessarily expect all plaintiffs to have to "plead the mechanical details" of a defect in order to state a claim. See Cholakyan v. Mercedes-Benz USA, LLC, 796 F. Supp. 2d 1220, 1237 n.60 (C.D. Cal. 2011). However, the level of specificity required appears to directly correlate to the complexity of the machinery in question. See, e.g., Yagman, 2014 WL 4177295 at *2 (requiring more detailed factual allegations where either engine or electrical system could have possibly been defective);

6

Fontalvo, 2013 WL 4401437 at *4 (allegations about a "wide array of parts" that made helicopter defective were insufficient to state claims for strict products liability, negligence, and breach of warranty).  In a challenge regarding a less complex component, allegations similar to Plaintiffs' might be sufficient.  See Aguilar, 2013 WL 5670888 at *7 (allegation of a "steering defect" was sufficient to survive a motion to dismiss for failure to state a claim).  In this case, however, Plaintiffs must go further than a conclusory allegation that the Transmission Defect exists and is responsible for the injuries outlined in the FAC because automatic transmissions, including the DDCT, are complicated systems that demand more detailed factual allegations in order to identify a plausible defect.  Given the complexity of the DDCT, Plaintiffs must allege the specific facts that plausibly support their belief in the existence of a defect for which Defendant is responsible in order to give Defendant sufficient notice to defend against their claims.  In doing so, Plaintiffs must also plausibly connect the existence of the alleged defect to the injuries they claim to have suffered.[4]  Accordingly, Defendant's Motion to Dismiss is GRANTED with leave to amend.

Because Plaintiffs' failure to plausibly allege the existence of a defect requires dismissal of the FAC in its entirety, the Court declines to consider Defendant's other arguments in support of its Motion.  For the same reason, the Motion to Strike is DENIED as moot.

## CONCLUSION

For the reasons above, Defendant's Motion to Dismiss (ECF No. 21) is GRANTED with leave to amend.  Plaintiffs are directed to file an amended complaint no

///

---

[4] In amending the FAC, Plaintiffs need not choose between their manufacturing and design defect theories of liability.  Despite Defendant's argument that Plaintiffs must allege either a design or manufacturing defect (ECF No. 26 at 4), the Court is unaware of any authority that would prevent Plaintiffs from proceeding on both theories so long as they are plausibly stated.

later than sixty (60) days from the date of this order.  Defendant's Motion to Strike (ECF No. 20) is DENIED.

   IT IS SO ORDERED.

Dated:  November 9, 2015

_____
MORRISON C. ENGLAND, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT