UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

DEBORAH DECOTEAU, et al.,

        Plaintiffs,

    v.

FCA US LLC (f/k/a/ Chrysler Group
LLC), a Delaware limited liability
company,

        Defendant.

No.  2:15-cv-00020-MCE-EFB

**MEMORANDUM AND ORDER**

    Through this class action, Plaintiffs Deborah DeCoteau and Lilliana Navia bring claims under various consumer protection statutes against Defendant FCA US LLC (f/k/a/ Chrysler Group LLC).  Specifically, Plaintiffs allege that they are entitled to declaratory, injunctive, and monetary relief because Defendant knowingly manufactured and marketed vehicles known as "Dodge Darts" (hereafter, the "Dart") that were equipped with defective transmissions.  Presently before the Court are Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint ("SAC") for failure to state a claim ("Motion to Dismiss") and Alternative Motion to Dismiss Request for Recall-Related Relief ("Recall Motion to Dismiss").  ECF Nos. 36–37.  For the reasons that follow, the Court agrees that Plaintiffs have not satisfied the requirement—set out in the Court's prior order—that they allege specific facts that plausibly support the existence of a defect

1  for which Defendant is responsible in order to give Defendant sufficient notice to defend
2  against their claims.  Nor have they plausibly connected the existence of the alleged
3  defect to the injuries they claim to have suffered.  The Court therefore GRANTS
4  Defendant's Motion to Dismiss and DISMISSES the Plaintiffs' SAC with leave to amend.
5  As a result, the Court need not consider the remaining arguments set forth in
6  Defendant's Motion to Dismiss or the Recall Motion to Dismiss.

7
8                              **BACKGROUND**[1]
9

10         Defendant designs and manufactures motor vehicles for sale in the United States
11  and throughout the world.  One such vehicle is the Dart.  In 2012, Defendant began
12  manufacturing and marketing Darts that were equipped with Dual Dry-Clutch
13  Transmissions ("DDCT").  Defendant characterized the DDCT as a "best of both worlds"
14  transmission that combined a manual transmission's fuel efficiency with an automatic
15  transmission's ease of operation.  Traditional manual transmissions require the driver to
16  press a foot pedal to manually change gears.  Typical automatic transmissions, on the
17  other hand, obviate the need for manual shifting by substituting a torque converter for
18  the use of a manual clutch.  The torque converter transmits power from the engine to the
19  transmission through a fluid medium.  Since a clutch-operated gearbox transfers power
20  from the engine more efficiently than a torque converter, automatic transmissions are
21  generally less fuel efficient and slower-shifting than their manual counterparts.  The
22  DDCT uses two computerized clutches instead of a torque converter to directly engage
23  and disengage the engine from the transmission, theoretically providing both greater
24  convenience and increased fuel efficiency.  The clutches in Defendant's DDCT are
25  characterized as "dry," since unlike "wet" dual clutch systems, they are not bathed in oil.
26         Plaintiffs are California citizens, each of whom purchased a Dart equipped with a
27  DDCT primarily for personal, family, or household use.  Within a year of purchase,

28  _____
[1] The following is taken from Plaintiff's SAC.

1   Plaintiffs noticed that their Darts would sometimes surge forward or hesitate before

2   taking off from a stop.  Approximately a year and a half after she purchased her Dart,

3   Plaintiff DeCoteau experienced a problem in which the vehicle stopped moving while she

4   was driving, as though it was stuck in park or neutral, although the engine continued to

5   run.  Plaintiff Navia similarly experienced rough and jerking transmission shifts.  In

6   addition, she contends that when she stopped her Dart, the vehicle would automatically

7   move backward.  According to Plaintiffs, "one or more design defects" contained in the

8   DDCT's clutches caused these and a host of other problems.  Because these problems

9   severely affect a driver's ability to control speed, acceleration, and deceleration, Plaintiffs

10   contend they present a safety hazard to DDCT-equipped Dart occupants.  The defect

11   also purportedly causes premature wear to the DDCT and related components.  Each of

12   Plaintiffs' causes of action depends on the existence of a defect.

13   Plaintiffs filed this suit in state court on December 4, 2014, and Defendant

14   subsequently removed the case to this Court.  ECF No. 1.  On March 20, 2015,

15   Defendant filed a Motion to Dismiss Plaintiffs' First Amended Complaint ("FAC") for

16   failure to state a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6),[2] ECF No.

17   21, which the Court granted with leave to amend, ECF No. 29.  On January 8, 2016,

18   Plaintiffs filed their Second Amended Complaint ("SAC").  ECF No. 31.  On March 9,

19   2016, Defendant filed two motions to dismiss for failure to state a claim under Rule

20   12(b)(6):  one to dismiss the claims brought against it and one to dismiss the injunctive

21   relief sought by Plaintiffs.  ECF Nos. 36–37.

23   **STANDARD**

25   On a motion to dismiss for failure to state a claim under Federal Rule of Civil

26   Procedure 12(b)(6), all allegations of material fact must be accepted as true and

27   _____

28   [2] Defendant also filed a Motion to Strike under Rule 12(f), ECF No. 20, but it was rendered moot by the disposition of its Rule 12(b)(6) motion, ECF No. 29.

1  construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins.

2  Co., 80 F.3d 336, 337–38 (9th Cir. 1996).  Rule 8(a)(2) "requires only 'a short and plain

3  statement of the claim showing that the pleader is entitled to relief' in order to 'give the

4  defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell

5  Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41,

6  47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require

7  detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of

8  his entitlement to relief requires more than labels and conclusions, and a formulaic

9  recitation of the elements of a cause of action will not do."  Id. (citation omitted).  A court

10  is not required to accept as true a "legal conclusion couched as a factual allegation."

11  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

12  "Factual allegations must be enough to raise a right to relief above the speculative level."

13  Twombly, 550 U.S. at 555 (citing Charles Alan Wright & Arthur R. Miller, Federal

14  Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain

15  something more than "a statement of facts that merely creates a suspicion [of] a legally

16  cognizable right of action")).

17          Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket

18  assertion, of entitlement to relief."  Twombly, 550 U.S. at 555 n.3 (citation omitted).

19  Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant

20  could satisfy the requirements of providing not only 'fair notice' of the nature of the claim,

21  but also 'grounds' on which the claim rests."  Id. (citing Wright & Miller, supra, at 94–95).

22  A pleading must contain "only enough facts to state a claim to relief that is plausible on

23  its face."  Id. at 570.  If the "plaintiffs . . . have not nudged their claims across the line

24  from conceivable to plausible, their complaint must be dismissed."  Id.  However, "[a]

25  well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of

26  those facts is improbable, and 'that a recovery is very remote and unlikely.'"  Id. at 556

27  (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

28  ///

1   A court granting a motion to dismiss a complaint must then decide whether to

2   grant leave to amend.  Leave to amend should be "freely given" where there is no

3   "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice

4   to the opposing party by virtue of allowance of the amendment, [or] futility of

5   amendment . . . ."  Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v.

6   Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to

7   be considered when deciding whether to grant leave to amend).  Not all of these factors

8   merit equal weight.  Rather, "The consideration of prejudice to the opposing party . . .

9   carries the greatest weight."  Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183,

10  185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that

11  "the complaint could not be saved by any amendment."  Intri-Plex Techs. V. Crest Grp.,

12  Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006,

13  1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir.

14  1989) ("Leave need not be granted where the amendment of the complaint . . .

15  constitutes an exercise in futility . . . .")).

16

17  **ANALYSIS**

18

19  Plaintiffs' FAC "present[ed] a close question regarding the level of factual

20  specificity necessary to plead claims based on product defects."  Mem. & Order 5:10–11,

21  ECF No. 29.  Defendant's motion to dismiss was granted because Plaintiffs made only "a

22  conclusory allegation that the Transmission Defect exists and is responsible for the

23  injuries outlined in the FAC."  Id. at 7:7–8.  "[A]utomatic transmissions, including the

24  DDCT, are complicated systems that demand more detailed factual allegations in order

25  to identify a plausible defect."  Id. at 7:8–10.  In order to make a viable claim, "Plaintiffs

26  must also plausibly connect the existence of the alleged defect to the injuries they claim

27  to have suffered."  Id. at 7:13–14.

28  ///

In response, Plaintiffs narrowed their claim to the DDCT's clutches.  Plaintiffs allege in their SAC that the clutches suffer from a design defect,[3] rendering them "not robust enough for the application."  SAC ¶ 14, ECF No. 31.  While this would seem to indicate something along the lines of a deficiency in structural integrity,[4] it is not entirely clear what the allegation means.  Nowhere in Plaintiffs' SAC do they define what they intend by the phrase, "not robust enough," or indicate how insufficient "robustness" contributes to their alleged injuries.  Plaintiffs' opposition to the motion, though, contends that "the DDCT's clutches are insufficiently robust because they operate without the heat management of a wet clutch system."  Pls.' Opp'n to Mot. To Dismiss 5:14–15, ECF No. 39.  Though all plausible inferences must be drawn in favor of the Plaintiffs in the pleading stage, it is not plausible to infer from the SAC that insufficient "robustness" is a result of the DDCT status as a "dry" system; the SAC makes no attempt to connect these two ideas.  Though the DDCT is described as a "dry" system and the SAC explains generally what a "dry" system is, the SAC contains no allegation that foregoing the use of oil baths, as found in a "wet" system, renders the DDCT defective.  Though this connection is made in Plaintiffs' opposition papers, the Court is not permitted to consider new allegations made outside of the complaint itself in response to a Rule 12(b)(6) motion.  Schneider v. Cal. Dep't of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.").

Even assuming that the SAC sufficiently alleged the lack of a "wet" system made the clutches "not robust enough," Plaintiffs have failed to plausibly connect this alleged defect to the injuries they purportedly suffered.  The SAC only states that "one or more

---

[3] However, Plaintiffs also confusingly argue in their opposition to the motion to dismiss that their "allegations are not limited to design defects."  Opp. to Mot. to Dismiss 3:15–16, ECF No. 39.  This Court, however, will only consider the allegations contained in the SAC, see infra, which alleges only design defects.

[4] See robust, Merriam-Webster, http://www.merriam-webster.com/dictionary/robust (last visited Sept. 14, 2016) (defining "robust" as meaning, inter alia, "strongly formed or constructed").

1   design defects . . . cause" the complained of injuries.  SAC ¶ 14, ECF No. 31.  Once

2   again, only in Plaintiffs' opposition papers do they provide the missing link.  There,

3   Plaintiffs claim that "it is plausible . . . that overheated and warped ('fried') clutches

4   (which are caused by an inadequate cooling system in FCA's dry clutch design) are

5   responsible for the symptoms that Plaintiffs allege."  Pls.' Opp. To Mot. To Dismiss 2:4–

6   6, ECF No. 39.  As before, this Court may only consider the complaint itself.  Nowhere in

7   the complaint is this connection between the DDCTs being "dry" and the alleged injuries

8   drawn.  Indeed, there is not even any mention of overheating and warping of the

9   clutches.[5]

10          Furthermore, in their opposition papers, Plaintiffs characterize the immediate

11   cause of the alleged injuries to be "fried" clutches.  However, only one of the two named

12   plaintiffs' cars—Navia's—allegedly had "fried" clutches.  SAC ¶ 49, ECF No. 31.  As for

13   Plaintiff DeCoteau, the SAC only includes the bare statement that "the defect in Plaintiff

14   DeCoteau's vehicle is located in the clutches."  Id. at ¶ 40.  This is despite the

15   immediately preceding paragraph, which alleges that the fault in Defendant's repairs was

16   that its authorized dealer "was not able to program [the Transmission Control Module]

17   correctly."  Id. at ¶ 39.  Thus, even if the allegation that the clutches were "not robust

18   enough" were sufficient to survive a motion to dismiss, and the connection between this

19   alleged defect and the alleged injuries suffered were clearly laid out in the SAC, the

20   defect—as described by Plaintiffs in their opposition papers—has only been alleged to

21   exist in Plaintiff Navia's car, not Plaintiff DeCoteau's.

22          As discussed in this Court's prior order, the Ninth Circuit has not squarely

23   addressed the level of detail necessary under these circumstances, nor is there any

24   consensus at the district level.  Compare Aguilar v. General Motors, LLC, No. 1:13-cv-

25   00437, 2013 WL 5670888, at *7 (E.D. Cal. Oct. 16, 2013) (finding an allegation of a

26   "steering defect that can result in potential failure of power steering . . . and a loss of

27          [5] Between "overheating" and "warping," only "overheating" is mentioned in the SAC.  However, it is
characterized as an injury, not the causation of or link between the alleged design defect and the alleged

28   injuries.  See, e.g., SAC ¶ 14, ECF No. 31.

1  steering control during the normal course of driving" sufficient to survive a motion under

2  Rule 12(b)(6)), with Fontalvo ex rel. Fontalvo v. Sikorsky Aircraft Corp., 2013 WL

3  4401437, at *4 (S.D. Cal. Aug. 15, 2013) (dismissing cause of action because the

4  plaintiff failed to allege what particular component was defective or what aspects of the

5  components design and manufacture made it defective).

6          The Court does not necessarily expect all plaintiffs to have to "plead the

7  mechanical details" of a defect in order to state a claim.  See Cholakyan v. Mercedes-

8  Benz USA, LLC, 796 F. Supp. 2d 1220, 1237 n.60 (C.D. Cal. 2011).  However, the level

9  of specificity required appears to directly correlate to the complexity of the machinery in

10 question.  See, e.g., Yagman, 2014 WL 4177295, at *2 (requiring more detailed factual

11 allegations where either engine or electrical system could have possibly been defective);

12 Fontalvo, 2013 WL 4401437, at *4 (allegations about a "wide array of parts" that made

13 helicopter defective were insufficient to state claims for strict products liability,

14 negligence and breach of warranty).  Accordingly, Plaintiffs must allege the specific facts

15 that plausibly support their belief in the existence of a defect for which Defendant is

16 responsible in order to give Defendant sufficient notice to defend against their claims,

17 and plausibly connect the existence of the alleged defect to the injuries they claim to

18 have suffered.  Plaintiffs must do so in their complaint, and not in opposition papers.

19 Plaintiffs' SAC falls short of these requirements, and accordingly Defendant's Motion to

20 Dismiss is GRANTED with leave to amend.

21         Because Plaintiffs' failure to plausibly allege the existence of a defect requires

22 dismissal of the SAC in its entirety, the Court declines to consider Defendant's other

23 arguments in support of its Motion.  For the same reason, the Recall Motion to Dismiss is

24 DENIED as moot.

25 ///

26 ///

27 ///

28 ///

8

1

**CONCLUSION**

2

3      For the reasons above, Defendant's Motion to Dismiss, ECF No. 36, is GRANTED

4   with leave to amend. Plaintiffs are directed to file an amended complaint no later than

5   sixty (60) days from the date of this order.  Defendant's Recall Motion to Dismiss, ECF

6   No. 37, is DENIED.

7      IT IS SO ORDERED.

8   Dated:  September 23, 2016

9

10   _____
    MORRISON C. ENGLAND, JR.
11   UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28